## DUNN, commissioner, *et al. v.* HARRIS *et al.*

The court erred in granting the injunction restraining the commissioners
of roads and revenue from levying the tax to build a court-house.

DECEMBER 15, 1915.

Injunction. Before Judge Fite. Murray superior court. September 11, 1915.

J. D. Harris and five other citizens and taxpayers of Murray county brought their petition against D. R. Dunn, T. M. Hemphill, and J. A. McGhee, composing the board of commissioners of roads and revenue of Murray County, and J. M. Sellers, clerk of the board, and alleged substantially as follows: The plaintiffs are concerned and have an interest in administering the affairs of the county. The defendants are proceeding and seeking to levy, and will levy unless enjoined from so doing, a tax to build, or "hull in" a court-house for said county, the tax to be levied, as plaintiffs are informed, at once, or not later than September 7, 1915. There is now pending in the Supreme Court of the State the case of E. H. Beck against the board of commissioners of the county, wherein is sought a reversal of an injunction granted by the superior court restraining the building of a court-house at Chatsworth in said county, for the reasons set out in the bill of exceptions. To levy a tax for the purpose for which the defendants intend, and will do, would be illegal and without authority of law, for the reason that the building could not possibly be constructed during the year 1915, for which the tax would be levied and collected. The contract to carry out which the tax is sought to be levied and collected is void and not enforceable, for the reason that it provides for the construction of only a part of the building, and not for the completion of the whole of the building within the year in which the tax is to be levied and collected; and for the reason that the suit of E. H. Beck against the defendants is still pending, and, should it be sustained and the tax levied and collected, it would be illegal and would cause plaintiffs a multiplicity of lawsuits, with the expense and damage incident thereto. The defendants have been paying out of the funds of Murray County to J. M. Sellers, one of the defendants herein, money as fees in the case of E. H. Beck against the board of commissioners, for which there is no authority in the board, by the law creating the board and the laws

of the State. They have issued to Sellers a voucher for the sum
of $250 and a voucher for $100, payable December 20, 1915, for
services in another case of H. H. Anderson against the board, which
is without authority of law, and is unreasonable and exorbitant.
Plaintiffs prayed (*a*) that the board of commissioners (naming
them) be enjoined from levying the tax mentioned; (*b*) that they
be enjoined from paying out any money from the funds of Murray
county to J. M. Sellers in this case, or any other case involving
the levying and collecting of any tax for the building of a court-
house under the proceeding named herein; (*c*) that the board be
enjoined from paying to J. M. Sellers the amount of $250, and the
sum of $100. By an amendment the plaintiffs alleged that the
notice published in the Chatsworth Times, to contractors, of the
letting of the contract to build the court-house at Chatsworth, re-
ferred to in the original petition, was never posted at the court-
house door as the law requires, and hence the contract awarded to
J. H. Carr & Co., on May 25, 1915, is void for the reason that the
contract price with Carr & Co. to "hull in" or build the walls and
cover the building was for the sum of $31,282, which is approxi-
mately one half of the entire cost of the whole or the completion of
the court-house; and it is alleged that the sum is an exorbitant
amount to pay for such building, and the defendants were grossly
indiscreet in contracting to pay such a price. The defendants
have already paid to Alexander Blair, architect, the sum of $2,200,
or other large sum, for the plans and specifications of the court-
house, from taxes not levied and collected for that purpose. The
contract with Carr & Co. to build the court-house is void, for the
reason that the notice published in the Chatsworth Times to con-
tractors for bids or proposals was to build and complete the court-
house, and the contract let, following the notice, was to "hull in"
or build the walls and to cover only.

The defendants filed their answer in which they averred, among
other things, as follows: It is not true that they are proceeding
and seeking to levy a tax as set out in paragraph two of the peti-
tion, but they had already levied a special tax for the building
of a court-house in the county prior to the filing of the peti-
tion and before the defendants had any notice or knowl-
edge that any order had been granted in the case by the court,
or that such a petition had been presented to the court. In

the year 1912 the qualified voters of Murray county voted upon an application to remove the county site from Spring Place to Chatsworth in Murray county, and in 1913 the General Assembly of the State passed an act removing the county site from Spring Place to Chatsworth. No court-house has yet been erected for the county at Chatsworth, and it is necessary and under the law made the duty of these defendants to have erected a court-house at Chatsworth, the new county-site of the county. These defendants proceeded in the manner provided by law to advertise for bids for the erection of the court-house in accordance with plans and specifications which had been prepared for that purpose; and on May 25, 1915, these defendants did let a contract to H. J. Carr & Co., for the building of a court-house according to the plans and specifications, exterior finished only, to include dome. The contract was let in the manner prescribed by law, and the special tax heretofore referred to was levied for the purpose of raising the funds necessary for these defendants to pay the contract price of the work when completed in accordance with the plans and specifications. Defendants admit the pendency in the Supreme Court of the case stated, but deny that there was any injunction granted against the building of a court-house at Chatsworth, the injunction being restricted as to the location and arrangement of the court-house. The order granted expressly authorized the defendants to build a court-house, provided they followed the plan outlined by the court's order; and they aver that the pendency of the above-stated case in the Supreme Court furnishes no reason why the defendants should not proceed to raise a fund in the manner provided by law for the erection of a court-house at Chatsworth. They admit that the whole building is not to be completed during the present year, but deny the conclusions asserted by the plaintiffs by reason thereof. They admit that J. M. Sellers has been representing them as attorney in litigation brought against them in connection with their management of the county affairs, and especially in the cases referred to; but they deny that the issuing of warrants to him for his services, or the payment by these defendants of the warrants, is illegal. He was sole counsel for defendants in the cases, and it was necessary that they have the benefit of counsel; and the sums paid to him for his services were not exorbitant, but reasonable and just.

*Jesse M. Sellers* and *D. W. Blair,* for plaintiffs in error.

*J. J. Bates* and *H. H. Anderson,* contra.

HILL, J. (After stating the foregoing facts.) After hearing the case the trial judge made the following order: "Upon consideration it is ordered that the injunction heretofore granted be and the same is hereby continued, except as to employment of counsel." We construe this order as not granting an injunction so far as the fees of defendants' counsel, Sellers, are concerned. There was no evidence introduced attacking the fees of Sellers, and this part of the order need not be further considered. The prayer only seeks to enjoin the commissioners from levying the tax for the court-house. The petition was not verified by the plaintiffs, but only by the attorney for the plaintiffs, the verification being as follows: "You, J. J. Bates, attorney for the plaintiffs in the within petition, do swear that the facts therein contained are true of your own knowledge, and so far as derived from the knowledge of others you believe them to be true." The answer of the defendants contained the following as to the levy of the tax: "These defendants say that it is not true that they are proceeding and seeking to levy a tax as set out in paragraph two of the petition, but aver that they had already levied a special tax for the building of a court-house in said county, prior to the filing of the petition in the above-stated case, and before these defendants had any notice or knowledge that any order had been granted in the above case by the court or that such a petition had been presented to the court." This answer was sworn to positively by the defendants, and no evidence to disprove or rebut it as to the above allegation was introduced. The rule nisi and order of the court was dated August 20, 1915, and the order of the commissioners levying the tax bore the same date. No evidence was introduced tending to show whether the order of the judge passed at Cartersville, or the order of the commissioners levying the tax (which was doubtless passed at Chatsworth, the county site), was passed first. Sellers, one of the defendants and the clerk of the board of commissioners, made an affidavit that "the said tax levies are a copy of those made by said commissioners on the 20th day of August, 1915; that said levies were made, entered on the commissioners' court minutes, and a copy thereof delivered to the Chatsworth Times; that a copy was posted before the court-house door of said county at

Chatsworth, and a copy mailed to T. P. Ramsey, tax-collector of said county, before deponent had any notice whatever of an order granted by the superior court of said county to restrain the commissioners from making said levy."

In *New South Building & Loan Association* v. *Willingham,* 93 *Ga.* 218 (18 S. E. 435), it was held: "Neither the petition nor the answer of the debtors being verified in positive terms, and the hearing having taken place without any evidence, by affidavit or otherwise, establishing the facts alleged in the petition, the judge erred in appointing a receiver and granting an injunction as against the rights and over the objection of the plaintiff in error." Under the evidence and the record as appears before us, we must take it as true that the county commissioners levied the tax before they had any notice of the grant of the restraining order—if, indeed, one had been granted at that time. If they so acted, then the levy of the tax for the court-house was legal when made; and if it was legal when made, then on a subsequent interlocutory hearing an injunction to restrain the commissioners from making it could not be granted. Copies of the Chatsworth Times were introduced in evidence, showing that the tax levy had been published therein three times, on the following dates: August 26, September 2, and September 9, after notice of the injunction was served on the defendants. This publication contained a copy of the order including a levy of a special tax for the purpose of erecting a court-house. The order bore the signatures of the commissioners. The tax was levied by an order of the commissioners. The publication or advertisement of the order in the newspaper followed the levy of the tax. Although the provision of the Civil Code (1910), § 515, in regard to publishing an advertisement of the copy of the order levying the tax in a public gazette should be complied with, such provision is directory, not mandatory. It is not the levy itself, but a publication of a levy already made, which gives to the public notice of such levy. *Garrison* v. *Perkins,* 137 *Ga.* 744 (74 S. E. 541) ; *Dunn* v. *Harris,* ante, 157 (86 S. E. 556). If the levy had been legally made, the publication of it three times in the Chatsworth Times after service on the defendants of the restraining order did not render it illegal. If it had been so legally made, and had become an accomplished fact before notice of the restraining order was had, it could not at a subsequent hearing be

enjoined. While the briefs of counsel for the defendants in error have argued somewhat broadly in regard to the conduct of the commissioners, it is our duty to pass upon the case upon the' record and evidence set out in the bill of exceptions, and not upon facts suggested as actually or possibly existing, but not shown by them. So doing, it is our duty to declare that the presiding judge erred in granting an injunction, on September 11th, to restrain the county commissioners from levying a tax which, the evidence showed, had been levied on August 20th, and before they had any notice of the restraining order, as will be seen above.

We need not enter into a discussion as to the contention that the contract for the building of the court-house was legal or illegal upon the grounds upon which it was attacked. Neither the restraining order nor the injunction following it referred to the making or the execution of the contract, or sought to enjoin the tax-collector from collecting the tax, but, as fully shown above (aside from referring to the fees of Sellers), was limited to restraining the commissioners from levying the tax.·

*Judgment reversed. All the Justices concur.*